[No. 27370-9-III.   Division Three.   September 10, 2009.]

UNION ELEVATOR & WAREHOUSE COMPANY, INC., *Appellant*, v.
THE STATE OF WASHINGTON, *Respondent*.

*Kevin W. Roberts* (of *Dunn & Black, PS*), for appellant.

*Robert M. McKenna, Attorney General*, and *Donna R. Emmingham, Assistant*, for respondent.

¶1 SCHULTHEIS, C.J. — In *Union Elevator & Warehouse Co. v. State*, 144 Wn. App. 593, 606, 183 P.3d 1097 (2008) (*Union Elevator* II), we held that Union Elevator & Ware-

house Company, Inc., was entitled to relocation assistance benefits under Washington's relocation assistance and real property acquisition policy act (Relocation Act), chapter 8.26 RCW. On remand, the trial court denied interest on the award of relocation benefits. We reverse the trial court's decision, concluding that the State is liable for interest on damages under the Relocation Act. However, we affirm the trial court's limitation of attorney fees to the statutory maximum under the equal access to justice act (EAJA), RCW 4.84.350.

## FACTS

¶2 For a third time, we are asked to review a dispute between Union Elevator and the Washington State Department of Transportation (WSDOT). In *Union Elevator & Warehouse Co. v. State*, 96 Wn. App. 288, 980 P.2d 779 (1999) (*Union Elevator* I), we reversed the trial court's summary judgment dismissal of Union Elevator's inverse condemnation claim and remanded for trial on the issue of damages. In *Union Elevator* II, 144 Wn. App. at 606, we reversed the trial court's denial of Union Elevator's request for reimbursement under the Relocation Act for the cost of substitute machinery and equipment at its new site.

¶3 On remand, Union Elevator requested (1) interest on the award of relocation benefits, (2) attorney fees and costs under the EAJA, and (3) the remaining attorney fees and costs of $93,025 under RCW 8.25.070 and .075. As to the question of interest, Union Elevator pointed out that the legislative intent behind the Relocation Act is to make a property owner whole and that this purpose was frustrated by WSDOT's withholding of funds that belonged to Union Elevator for seven years. It also argued that due to WSDOT's delays, it was forced to incur attorney fees between March 2001 and July 2008 that exceeded the EAJA's cap of $25,000. In the alternative, Union Elevator argued that it was entitled to attorney fees under equity because WSDOT acted in bad faith. WSDOT countered that

the doctrine of sovereign immunity barred interest on the award of relocation benefits. It conceded that Union Elevator was entitled to attorney fees under the EAJA but argued that the provisions for attorney fees under RCW 8.25.070 and .075 did not apply to proceedings involving relocation benefits.

¶4 The trial court denied interest on the award of relocation benefits, stating, "I don't believe the current status of the law allows the Court to award those, those amounts, based upon what has been presented to me." Report of Proceedings at 27. The trial court awarded Union Elevator $25,000 in attorney fees under the EAJA but denied attorney fees under RCW 8.25.070 and .075, finding the latter statutes did not apply to the Relocation Act. The court also denied attorney fees on equitable grounds, finding the facts of the case did not support a bad faith claim.

¶5 Union Elevator appeals.

## ANALYSIS

### *Interest on Award of Relocation Assistance Benefits*

¶6 The first issue is whether Union Elevator is entitled to interest on its award of relocation assistance benefits under the Relocation Act. Union Elevator contends that "the Legislature waived the State's sovereign immunity by specifically including relocation assistance as part of Washington's Eminent Domain Law." Br. of Appellant at 10. It also argues that interest on relocation benefits furthers the legislative goal of "mak[ing] . . . whole" citizens whose property has been taken by the government. *Id.* at 10-11. Finally, Union Elevator argues that "interest is an extension of the damages WSDOT caused by taking Union Elevator's property" and therefore it is entitled to interest on the award that WSDOT withheld for seven years. *Id.* at 11.

¶7 The State responds that interest cannot be recovered in a suit against the government in the absence of a waiver of sovereign immunity, pointing out "there are no statutes

providing that the State is liable for interest on a claim for relocation assistance when the State's decision to deny that claim is overturned on appeal." Br. of Resp't at 15-16.

¶8 Whether the State is liable for interest upon a judgment under the Relocation Act is an issue of first impression that requires statutory interpretation. Questions of statutory interpretation are reviewed de novo. *State v. Ammons*, 136 Wn.2d 453, 456, 963 P.2d 812 (1998).

¶9 The primary objective of statutory interpretation is to ascertain the intent of the legislature. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992). If the statute's meaning is plain, then we give effect to that meaning as an expression of legislative intent. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). We first look to the language of the statute, as well as its context, related provisions, and the statutory scheme as a whole. *Id*. We must give meaning to every word in a statute and presume the legislature did not use any superfluous words. *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000). Further, "[t]he power of eminent domain is strictly construed against the government." *State v. Costich*, 117 Wn. App. 491, 499, 72 P.3d 190 (2003), *rev'd on other grounds*, 152 Wn.2d 463, 98 P.3d 795 (2004).

¶10 Generally, the State is not liable for interest unless it has expressly, or impliedly, placed itself in a position of liability. *State v. Hallauer*, 28 Wn. App. 453, 624 P.2d 736 (1981). It is well settled in Washington that the State has expressly waived immunity from interest in condemnation proceedings. *See, e.g., id.* at 455 (enumerating the statutes that subject the State to liability for interest in eminent domain proceedings); *In re Petition of City of Anacortes*, 81 Wn.2d 166, 169, 500 P.2d 546 (1972) (" 'the condemnee should be allowed interest upon the compensation and damages awarded' " (quoting *Indep. Sch. Dist. v. C.B. Lauch Constr. Co.*, 78 Idaho 485, 493, 305 P.2d 1077 (1957))).

¶11 In *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 656, 935 P.2d 555 (1997), the Washington Supreme Court explained that interest is necessary in condemnation proceedings to compensate the owner for the loss of the use of the monetary value of the taking from the time of the taking until just compensation is paid. It reasoned that such interest is "part of the damages and is required as part of just compensation." *Id.* at 657. It further noted,

> We assume a person who received the money value of his or her property as of the date of the taking has a beneficial use available for these funds. Interest in this context is not an award of prejudgment interest on a liquidated sum in the traditional sense, but is a measure of the rate of return on the property owner's money had there been no delay in payment.

*Id.* at 656 (citation omitted).

¶12 While there is no question that the State has waived immunity from interest for damages in condemnation proceedings, it is not clear whether the legislature intended this waiver to extend to awards under the Relocation Act. To resolve this issue, we first turn to the interest provisions in the eminent domain statute, chapter 8.04 RCW. First, RCW 8.04.092 provides:

> The amount paid into court shall constitute just compensation paid for the taking of such property: PROVIDED, That respondents may, in the same action, request a trial for the purpose of assessing the amount of compensation to be made *and the amount of damages arising from the taking.* . . . If, pursuant to such hearing, the verdict of the jury . . . or decision of the court, awards respondents an amount in excess of the tender, the court shall order the excess paid to respondents *with interest.*

(Emphasis added.)

¶13 Next, RCW 8.28.040, "Miscellaneous Provisions," provides:

> Whenever in any eminent domain proceeding . . . instituted for the taking or damaging of private property, a verdict shall have been returned . . . fixing the amount to be paid as compensation for the property so to be taken or damaged, such verdict shall bear interest at the maximum rate of interest permitted.

¶14 Bearing in mind that these provisions of the eminent domain statute must be harmonized with the chapter on relocation assistance, we next turn to the history and purpose of the Relocation Act. The Relocation Act, which substantially parallels the federal relocation assistance act, 42 U.S.C. §§ 4601-4655, states that its purpose is

> [t]o establish a uniform policy for the fair and equitable treatment of persons displaced as a direct result of public works programs . . . in order that such persons shall not suffer disproportionate injuries . . . and to minimize the hardship of displacement on such persons.

RCW 8.26.010(1)(a). Recognizing that damages resulting from condemnation proceedings may include more than the fair market value of the property, the legislature provided a broad range of financial assistance in condemnation cases, including moving costs, reestablishment expenses, and reimbursement for the purchase of substitute equipment. RCW 8.26.035(1)(a)-(d), .065.

¶15 A federal takings case noted that in passing the federal act, Congress indicated a willingness to depart from traditional methods of evaluating damages in condemnation cases. *Pou Pacheco v. Soler Aquino*, 833 F.2d 392, 396 (1st Cir. 1987). The *Pou Pacheco* court stated, " '[I]t [has become] increasingly apparent that the application of traditional concepts of valuation and eminent domain result[s] in inequitable treatment for large numbers of people displaced by public action.' " *Id.* (emphasis omitted) (quoting H.R. Rep. No. 91-1656 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5850, 5851). Similarly, in *Luber v. Milwaukee County*, 47 Wis. 2d 271, 280, 177 N.W.2d 380 (1970), the court stated, "Many states, realizing the injustice of denying recovery for other than the fair market value of the physical property actually taken, have created [relocation assistance] statutes."[1]

¶16 In view of the underlying policy of the Relocation Act and the legislature's recognition that damages in condem-

---

[1] The *Luber* court noted:

nation proceedings may encompass more than the market value of the property, we conclude that for purposes of RCW 8.04.092 and RCW 8.28.040, compensation includes all compensable damages flowing from the condemnation action, not just compensation for the physical taking of property. This approach finds support in Washington and other states. For example, in *Lange v. State*, 86 Wn.2d 585, 589, 547 P.2d 282 (1976), the Washington Supreme Court noted that a condemnee is entitled to be put in the same monetary position as he would have occupied had his property not been taken. It stated that just compensation "must be calculated from the standpoint of *what the property owner loses by having his property taken.*" *Id.* (emphasis added).

¶17  Additionally, in *Sintra*, 131 Wn.2d at 655, the court stated, "Just compensation requires that the property owner be put in the same position monetarily as he or she would have occupied had the property not been taken." *See also Jacksonville Expressway Auth. v. Henry G. Du Pree Co.*, 108 So. 2d 289, 291 (Fla. 1958) (the measure of damages in eminent domain proceedings is the loss to the owner); *Luber*, 47 Wis. 2d 271 (defining "compensation" in terms of the loss to the owner).

¶18  If compensation and damages in eminent domain proceedings are measured in terms of "what the owner has lost," Union Elevator incurred damages by paying for sub-

---

The importance of allowing recovery for incidental losses has increased significantly since condemnation powers were initially exercised in this country. During the early use of such power, land was usually undeveloped and takings seldom created incidental losses. Thus the former interpretation of the "just compensation" provision of our constitution seldom resulted in the infliction of the incidental losses. The rule allowing fair market value for only the physical property actually taken created no great hardship. In modern society, however, condemnation proceedings are necessitated by numerous needs of society and are initiated by numerous authorized bodies. Due to the fact people are often congregated in given areas and that we have reached a state wherein re-development is necessary, *commercial and industrial property* is often taken in condemnation proceedings. When such property is taken, incidental damages are very apt to occur and in some cases exceed the fair market value of the actual physical property taken.

*Luber*, 47 Wis. 2d at 279-80 (emphasis added and omitted) (footnote omitted).

stitute equipment as a result of the taking. RCW 8.04.092 provides for interest on "the amount of damages arising from the taking." Therefore, Union Elevator is entitled to interest on the award of relocation assistance benefits.

¶19 Our conclusion is consistent with the underlying purpose of the Relocation Act, which is that the owner should be made whole so far as possible and practicable. Reading the relocation benefits chapter in the context of the entire statute indicates that the legislature considered such benefits part of the compensation and damages owed to a condemnee. Accordingly, we conclude that the trial court erred in denying interest on the award of relocation benefits.

*Attorney Fees*

¶20 Next, we address whether the attorney fee provisions set forth in RCW 8.25.070 and .075 apply in the context of relocation assistance benefits. Under Washington law, a court has no power to award attorney fees in the absence of contract, statute, or recognized ground of equity providing for attorney fees. *Wagner v. Foote*, 128 Wn.2d 408, 416, 908 P.2d 884 (1996). "Whether a particular statutory or contractual provision, or recognized ground in equity, authorizes an award of attorney fees is a legal question we review de novo." *Schlener v. Allstate Ins. Co.*, 121 Wn. App. 384, 388, 88 P.3d 993 (2004). The federal counterpart to our attorney fee provisions "has been strictly construed as creating only a narrow exception to the general rule of nonrecovery of litigation expenses." *Daviscourt v. Peistrup*, 40 Wn. App. 433, 444, 698 P.2d 1093 (1985).

¶21 RCW 8.25.070(1) provides:

> Except as otherwise provided in subsection (3) of this section, if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, the court shall award the condemnee reasonable attorney's fees . . . in the event of any of the following:

(a) If condemnor fails to make any written offer in settlement to condemnee at least thirty days prior to commencement of said trial; or

(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action.

¶22 Additionally, RCW 8.25.070(3) provides that attorney fees under this section "shall be awarded only if the condemnee stipulates, if requested to do so in writing by the condemnor, to an order of immediate possession and use of the property being condemned."

¶23 The first rule for judicial interpretation of a statute is that the court should assume that the legislature means exactly what it says. Plain words do not require construction. *In re Petition of City of Renton*, 79 Wn.2d 374, 485 P.2d 613 (1971). The statutory language here plainly states that the State is liable for attorney fees *only* under the following circumstances: (1) there was no offer to settle; (2) the judgment was more than 10 percent of a settlement offer; or (3) if requested, the condemnee stipulates to an order of immediate possession and use and delivers possession of the property to the condemnor. The State points out, "Since none of the explicit statutory conditions occur in relocation assistance claims, it is clear the legislature did not intend to extend these benefits to those claims." Br. of Resp't at 11. We agree. Because none of the statutory conditions have any relevance to relocation benefits, it is reasonable to conclude that RCW 8.25.070 does not apply to proceedings under the Relocation Act.

¶24 Next, Union Elevator asserts that RCW 8.25.075(1) authorizes attorney fees. This statute provides:

A superior court having jurisdiction of a proceeding instituted by a condemnor to acquire real property shall award the condemnee costs including reasonable attorney fees and reasonable expert witness fees if:

(a) There is a final adjudication that the condemnor cannot acquire the real property by condemnation; or

(b) The proceeding is abandoned by the condemnor.

RCW 8.25.075(1).

¶25 We fail to see how this provision applies here. First, the action here was not a proceeding to acquire real property—it was a dispute over relocation benefits. Further, neither precondition (a) nor (b) is met here. Moreover, neither condition has any relevance to a claim for relocation benefits, which supports our conclusion that this provision does not apply to the Relocation Act. If the legislature had intended to allow attorney fees for claims other than takings of real property, it would have done so in the Relocation Act. *See Superior Strut & Hanger Co. v. Port of Oakland*, 72 Cal. App. 3d 987, 1004, 140 Cal. Rptr. 515 (1977) ("The [California relocation assistance law] nowhere provides for an award of attorney's fees to a party wrongfully denied relocation benefits.").

¶26 Union Elevator argues that nothing in the statutory provisions "limits the attorney fees awarded to those incurred in the inverse condemnation proceeding." Br. of Appellant at 15. To support its position, Union Elevator points to a companion regulation of the Relocation Act, which provides, "The owner of the real property shall be reimbursed for any reasonable expenses, including reasonable attorney, and expert witness fees, which the owner actually incurred because of a condemnation proceeding; pursuant to RCW 8.25.020 and 8.25.075." WAC 468-100-105.

¶27 Union Elevator's argument is not persuasive. Nothing in WAC 468-100-105 compels us to conclude that the legislature intended an award of attorney fees in actions to obtain relocation benefits. In fact, its references to RCW 8.25.020 and .075 support the opposite conclusion. RCW 8.25.020 involves "Payment to defray costs of evaluating offer" and RCW 8.25.075, as discussed, has no application to relocation benefits.

¶28 Finally, Union Elevator argues that the trial court erred in refusing to impose attorney fees on equitable grounds, arguing that WSDOT acted in bad faith in denying

Union Elevator's claim for relocation benefits. To support its claim, Union Elevator alleges that WSDOT (1) refused to follow its own regulations and denied Union Elevator's claim without providing a specific basis for the denial, (2) "took the unsupportable position that Union Elevator was not displaced," (3) drafted a "claim review" before denying the bulk of the claim, and (4) unreasonably delayed entering a final order after the administrative law judge rendered her decision. Br. of Appellant at 17-18.

¶29 A court's inherent equitable powers authorize an award of attorney fees in cases of bad faith conduct. *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 961 P.2d 343 (1998). The definition of "bad faith" is narrow and places a significant burden on the party claiming fees on this basis. *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 982 P.2d 131 (1999). "Bad faith" includes " 'obstinate conduct that necessitates legal action' to enforce a clearly valid claim or right," " 'vexatious' " conduct during the litigation, or the intentional bringing of a frivolous claim or defense with improper motive. *Id*. at 927-28 (quoting Jane P. Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System*, 61 N.C. L. Rev. 613, 632 (1983)).

¶30 We find no evidence of bad faith conduct here. WSDOT denied reimbursement for the substitute equipment because it determined that the equipment at issue was real property and therefore did not qualify for relocation assistance. In *Union Elevator* II, we acknowledged that it was difficult to characterize the property at issue and noted that some of the facts of the case supported WSDOT's position that the equipment was real property. There is no equitable basis to award attorney fees.

¶31 Affirmed in part and reversed in part.

### Attorney Fees on Appeal

¶32 Union Elevator requests attorney fees under RAP 18.1, RCW 8.25.070, RCW 8.25.075, and equity. A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of

fees and the party is the substantially prevailing party. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). For the reasons just discussed, Union Elevator is not entitled to attorney fees under RCW 8.25.070, RCW 8.25.075, or equitable principles.

BROWN, J., concurs.

¶33 KULIK, J. (dissenting) — I agree that RCW 8.25.070 and .075 do not provide for attorney fees in a relocation assistance benefit case. However, I disagree with the majority's conclusion that interest on relocation benefits can be awarded. Therefore, I respectfully dissent as to the award of interest on the relocation assistance benefits.

¶34 The trial court denied interest on the $235,000 award Union Elevator received under the relocation assistance and real property acquisition policy act, chapter 8.26 RCW. Union Elevator had previously been awarded $166,000 in compensation for the real property condemnation and $400,000 in interest and attorney fees. In this action, the trial court ordered and we now affirm $25,000 in attorney fees and costs under the equal access to justice act, RCW 4.84.350.

¶35 The trial court properly denied interest on the $235,000 relocation benefit because the State has not waived sovereign immunity. Unless the State waives its immunity, it cannot be liable for interest on its debts. *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 615, 94 P.3d 961 (2004) (quoting *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 455-56, 842 P.2d 956 (1993)). The majority mistakenly decides that relocation benefits should be treated like condemnation awards. But the State expressly waived immunity on interest in condemnation proceedings, but not in relocation assistance benefit cases. Extending immunity to interest on relocation assistance benefits is a matter for the legislature, not for this court. This is not an ambiguous statute; there is simply no language providing for interest on relocation assistance benefits.

¶36 I would affirm the trial court's denial of interest on the relocation assistance benefits.

Review granted for petitioner and review of issue raised in respondent's answer denied at 168 Wn.2d 1025 (2010).